**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | **MDL NO.: 2873 2:18-mn-2873-RMG** |

CAL D. HENRIE, and
KELLI JEAN HENRIE,

     Plaintiffs,

v.

THE 3M COMPANY (f/k/a Minnesota Mining and
Manufacturing Company), AGC CHEMICALS
AMERICAS, INC., AMEREX CORPORATION,
ARCHROMA, U.S., INC., ARKEMA, INC., BASF
CORPORATION, Individually and as Successor in
Interest to Ciba, Inc., BUCKEYE FIRE EQUIPMENT
COMPANY, CARRIER GLOBAL CORPORATION,
CHEMDESIGN PRODUCTS, INC., CHEMGUARD,
INC., CHEMICALS, INC., CHUBB FIRE, LTD.,
CLARIANT CORPORATION, Individually and as
Successor in Interest to Sandoz Chemical Corporation,
CORTEVA, INC., Individually and as Successor in
Interest to DuPont Chemical Solutions Enterprise,
DEEPWATER CHEMICALS, INC., DUPONT DE
NEMOURS, INC., Individually and as Successor in
Interest to DuPont Chemical Solutions Enterprise,
DYNAX CORPORATION, E. I. DUPONT DE
NEMOURS & COMPANY, Individually and as
Successor in Interest to DuPont Chemical Solutions
Enterprise, KIDDE PLC, INC., KIDDE-FENWAL,
INC., Individually and as Successor in Interest to
Kidde Fire Fighting, Inc., NATION FORD
CHEMICAL COMPANY, NATIONAL FOAM, INC.,
THE CHEMOURS COMPANY, Individually and as
Successor in Interest to DuPont Chemical Solutions
Enterprise, THE CHEMOURS COMPANY FC, LLC,
Individually and as Successor in Interest to DuPont
Chemical Solutions Enterprise, TYCO FIRE
PRODUCTS, LP, Individually and as Successor in
Interest to The Ansul Company, UNITED
TECHNOLOGIES CORPORATION, UTC FIRE &

COMPLAINT

Case No. 2:23-cv-01668-RMG

SECURITY AMERICA'S CORPORATION, and DOE     :
DEFENDANTS 1-20,                                          :
                                                                   :
*Defendants.*                                                 :

## PLAINTIFFS' ORIGINAL COMPLAINT
## AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiffs, CAL D. HENRIE ("Plaintiff" or collectively "Plaintiffs"), and KELLI JEAN HENRIE ("Spouse of Plaintiff" or collectively "Plaintiffs") by and through their undersigned counsel, hereby files this Complaint against: THE 3M COMPANY (f/k/a Minnesota Mining and Manufacturing Company), AGC CHEMICALS AMERICAS, INC., AMEREX CORPORATION, ARCHROMA U.S., INC., ARKEMA, INC., BASF CORPORATION, Individually and as Successor in Interest to Ciba, Inc., BUCKEYE FIRE EQUIPMENT COMPANY, CARRIER GLOBAL CORPORATION, CHEMDESIGN PRODUCTS, INC., CHEMGUARD, INC., CHEMICALS, INC., CHUBB FIRE, LTD., CLARIANT CORPORATION, Individually and as Successor in Interest to Sandoz Chemical Corporation, CORTEVA, INC., Individually and as Successor in Interest to DuPont Chemical Solutions Enterprise, DEEPWATER CHEMICALS, INC., DUPONT DE NEMOURS, INC., Individually and as Successor in Interest to DuPont Chemical Solutions Enterprise, DYNAX CORPORATION, E. I. DUPONT DE NEMOURS & COMPANY, Individually and as Successor in Interest to DuPont Chemical Solutions Enterprise, KIDDE PLC, INC., KIDDE-FENWAL, INC., Individually and as Successor in Interest to Kidde Fire Fighting, Inc., NATION FORD CHEMCIAL COMPANY, NATIONAL FOAM, INC., THE CHEMOURS COMPANY, Individually and as

Successor in Interest to DuPont Chemical Solutions Enterprise, THE CHEMOURS COMPANY FC, LLC, Individually and as Successor in Interest to DuPont Chemical Solutions Enterprise, TYCO FIRE PRODUCTS, LP, Individually and as Successor in Interest to The Ansul Company, UNITED TECHNOLOGIES CORPORATION, UTC FIRE & SECURITY AMERICA'S CORPORATION, and DOE DEFENDANTS 1-20, fictitious names whose present identifies are unknown (collectively "Defendants") and alleges, upon information and belief, as follows:

## NATURE OF THE ACTION

1.    This is a civil action for compensatory and punitive damages, costs incurred and to be incurred by Plaintiffs, and any other damages that the Court or jury may deem appropriate for bodily injury arising from the intentional, malicious, knowing, reckless and/or negligent acts and/or omissions of Defendants in connection with Aqueous Film-Forming Foam ("AFFF") containing Perfluorooctanoic Acid ("PFOA") and Perfluorooctanesulfonic acid ("PFOS") and/or the Plaintiffs. All Defendants engaged in the manufacturing of the fluorochemical products, AFFF and/or the precursors to PFOA and PFOS (collectively hereinafter "fluorochemical products" or "C8") to which Plaintiff was directly exposure as a civilian firefighter.

2.    This action involves highly toxic chemicals which have earned the designation "the forever chemicals" because they do not breakdown and their insidious nature allows them to travel through soil and into groundwater while maintaining their deadly nature for decades.

3.    For decades, the Defendants manufactured and sold AFFF and PFAS

for use in AFFF to the City of Las Vegas Fire and Rescue located in Las Vegas, Nevada.

4.    As the manufacturers of AFFF, the Defendants knew or should have known that the inclusion of Toxic Surfactants in AFFF presented an unreasonable risk to human health and the environment.

5.    Nonetheless, Defendants marketed, and sold their products with the full knowledge that large quantities of Toxic Surfactant-laden AFFF would be used in training exercises, and in emergency situations in such a manner that the dangerous chemicals would be introduced, in large quantities into the environment.

6.    Defendants manufactured AFFF, and/or PFAS for use in AFFF that contaminated and continues to contaminate the environment, yet no Defendant included user warnings to protect the environment or innocent bystanders.

7.    For years, Plaintiff was exposed to, and ingested PFOS, and PFOA at extremely high and dangerous levels.

8.    Plaintiff was exposed to Defendants' fluorochemical products throughout his many years of service as a civilian firefighter for the City of Las Vegas Fire and Rescue located in Las Vegas, Nevada from approximately 1988 until approximately 2017, including but not limited to, while training and routine trainings and active firefighting while in service as a civilian firefighter.

9.    As a result of his exposure to Defendants' fluorochemical products, Plaintiff was diagnosed with prostate cancer, and to suffer severe personal injuries, pain, and emotional distress.

10.    The injuries, pain, suffering, and emotional distress were caused by Defendants' fluorochemical products.

## FACTS AND SCIENCE APPLICABLE

11.    Aqueous Film Forming Foam ("AFFF") is a specialized substance designed to extinguish petroleum-based fires. It has been used for decades, and continues to be used, by civilian and military firefighters to put out fires and in training and response exercises in preparation for fires.

12.    AFFF contains synthetic, toxic per- and polyfluoroalkyl substances collectively known as "PFAS."[1] PFAS bind to proteins in the blood of animals and humans exposed to such materials and not only remain and persist over long periods of time, but, due to their unique chemical structure, accumulate and build up in the blood/body of the exposed individuals with each additional exposure, no matter how small. PFAS can travel long distances, move through soil, seep into groundwater, or be carried through air.

13.    Defendants collectively designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF with knowledge that it contained highly toxic and long lasting PFASs, which would contaminate Plaintiff's blood and/or body with

---

[1] PFAS" includes but is not limited to: perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS") and related chemicals, including but not limited to those that degrade to PFOA and/or PFOS, and including but not limited to C3-C-15 PFAS chemicals, such as perfluorohexanesulfonate (PFHxS), perfluorononanoate (PFNA), perfluorobutanesulfonate (PFBS), perfluorohexanoate (PFHxA), perfluoroheptanoate (PFHpA), perfluoroundecanoate (PFUnA), perfluorododecanoate (PFDoA), HFPA Dimer Acid (CAS # 13252 -13- 6/C3 Dimer Acid/P-08-508/FRD903/GX903/C3DA/GenX), and HFPA Dimer Acid Ammonium Salt (CAS#62037-80-3/ammonium salt of C3 Dimer Acid/P-08-509/FRD902/GX903/GenX).

PFAS, and the resultant biopersistence and bioaccumulation of such PFAS in the blood and/or body of Plaintiff. Further, defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

14.    As a result, Plaintiff was exposed to AFFF containing PFAS and suffered severe personal injuries as a result.

15.    This action is brought by Plaintiffs for injunctive, equitable, and declaratory relief for injuries arising from the intentional, knowing, reckless and/or negligent acts and/or omissions of Defendants in connection with contamination of the blood and/or body of the Plaintiff with PFAS through the design, marketing, development, manufacture, distribution, release, training, and sale of AFFF containing PFAS and/or underlying chemicals and/or products added to AFFF which contained PFAS.

## **JURISDICTION AND VENUE**

16.    This Court has jurisdiction over the Defendants and has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because complete diversity exists between Plaintiffs and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interests and cost.

17.    The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

18.    Plaintiffs are filing this Complaint as permitted by Case Management

Order No. 3 ("CMO #3") issued by Judge Richard M. Gergel of this Court. Pursuant to CMO #3, Plaintiffs designate the United States District Court for the District of Nevada as the "home venue" where Plaintiffs would have otherwise filed suit pursuant to 28 U.S.C. § 1391. But for CMO #3, venue is proper in the United States District Court for the District of Nevada in that the events or omissions giving rise to the claim occurred in that district. Plaintiffs respectfully request that, at the time of the transfer of this action back to trial court for further proceedings, this case be transferred to the United States District Court for the District of Nevada.

19.    The United States District Court for the District of Nevada has personal jurisdiction over the Defendants because at all times relevant to this lawsuit, the Defendants manufactured, designed, marketed, distributed, released, promoted and/or otherwise sold (directly or indirectly) PFAS-containing AFFF products to various locations, such that each Defendant knew or should have known that said products would be delivered to areas in the State of Nevada for active use by Plaintiff during the training activities and firefighting activities. Therefore, the exercise of jurisdiction over the Defendants by the United States District Court for the District of Nevada of does not offend traditional notions of fair play and substantial justice.

## PARTIES

### A.    PLAINTIFFS

20.    Plaintiff, CAL D. HENRIE, is a citizen of the United States of America and a current resident of Las Vegas, Clark County, Nevada

21.    Plaintiff, CAL D. HENRIE, was born on April 13, 1961.

22.    Spouse of Plaintiff, KELLI JEAN HENRIE, is a citizen of the United States of America and a current resident of Las Vegas, Clark County, Nevada.

23.    Plaintiff and Spouse of Plaintiff were married in approximately 1981, and continue to be married and reside with each other to the present.

## B.    DEFENDANTS

24.    The term "Defendant" or "Defendants" refers to all Defendants named herein jointly and severally.

25.    Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates, and divisions of the named Defendants.

26.    When reference is made in this Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees, or representatives of the defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of defendants, and did so while acting within the scope of their duties, employment or agency.

27.    At all times relevant to this litigation, upon information and belief, each of the defendants designed, developed, manufactured, marketed and/or sold the AFFF or fluorochemical products containing PFOA or PFOS used by firefighters throughout the country, including the State of Nevada.

28.    Each of the Defendants designed, marketed, developed, manufactured,

distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or designed and manufactured components of and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint in such a way as to result in the contamination of Plaintiff's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in Plaintiff's blood and/or body.

29.     Defendant, **THE 3M COMPANY** (f/k/a/ Minnesota Mining and Manufacturing Company) ("3M") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 3M Center, St. Paul, MN 55144. **Defendant may be served via Alternative Service as set forth in CMO #6**.

30.     Defendant, 3M COMPANY manufactured, distributed, and sold fluorochemical products and AFFF from the 1960s until 2002.

31.     Defendant, **AGC CHEMICALS AMERICAS INC**. ("AGC Americas") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 11175 Cicero Drive, Alpharetta, GA 30022. **Defendant may be served via Alternative Service as set forth in CMO #6D**.

32.     AGC Americas operates throughout the United States, manufacturing glass, electronic displays, and chemical products, including resins, water and oil repellants, greenhouse films, silica additives, and various fluorointermediates, including those used in AFFF products.

33.     Defendant, **AMEREX CORPORATION** ("Amerex") is a corporation

organized and existing under the laws of Alabama, with its principal place of business at 7595 Gadsden Highway, Trussville, AL 35173. **Defendant may be served via Alternative Service as set forth in CMO #6A.**

34.     Defendant **ARCHROMA U.S., INC.** ("Archroma"), is a corporation organized and existing under the laws of Delaware, having a principal place of business at 4000 Monroe Road, Charlotte, NC 28205. **Defendant may be served via Alternative Service as set forth in CMO #6A.**

35.     Defendant, **ARKEMA, INC.** ("Arkema") is a corporation organized and existing under the laws of Pennsylvania, having a principal place of business at 900 First Avenue, King of Prussia, PA 19406. **Defendant may be served via Alternative Service as set forth in CMO #6A.**

36.     Arkema develops specialty chemicals and fluoropolymers.

37.     Arkema is a successor in interest to Elf Atochem North America and Atofina Chemicals Inc., which manufactured fluorosurfactants containing PFOA that was used in AFFF.

38.     Defendant, **BASF CORPORATION** ("BASF") is a corporation organized and existing under the laws of Delaware, having a principal place of business at 100 Park Avenue, Florham Park, NJ 07932. **Defendant may be served via Alternative Service as set forth in CMO #6A.**

39.     On information and belief, BASF is the largest affiliate of BASF SE and the second largest producer and marketer of chemicals and related products in North America.

40.    On information and belief, BASF Corporation is the successor in interest to Ciba-Geigy, Inc., Ciba Specialty Chemicals Company, and Ciba, Inc., a Swiss specialty chemicals company, which manufactured fluorosurfactants containing PFOA used in AFFF.

41.    Defendant, **BUCKEYE FIRE EQUIPMENT COMPANY** ("Buckeye") is a corporation organized and existing under the laws of Ohio, with its principal place of business at 110 Kings Road, Kings Mountain, NC 28086. **Defendant may be served via Alternative Service as set forth in CMO #6.**

42.    Defendant, **CARRIER GLOBAL CORPORATION** ("Carrier"), is a corporation organized and existing under the laws of Delaware, with its principal place of business at 13995 Pasteur Blvd., Palm Beach Garden, FL 33418. **Defendant may be served via Alternative Service as set forth in CMO #6C.**

43.    Defendant, **CHEMDESIGN PRODUCTS, INC.** is a corporation organized and existing under the laws of Texas, with its principal place of business at 2 Stanton Street, Marinette, WI 54143. **Defendant may be served via Alternative Service as set forth in CMO #6B.**

44.    Defendant, **CHEMGUARD, INC.** ("Chemguard") is a corporation organized and existing under the laws of Texas, with its principal place of business at One Stanton Street, Marinette, WI 54143. **Defendant may be served via Alternative Service as set forth in CMO #6**.

45.    Upon information and belief, Chemguard is a subsidiary of Johnson Controls International, PLC.

46. Defendant, **CHEMICALS, INC.** ("Chemicals") is a corporation organized and existing under the laws of Texas, with its principal place of business at 12321 Hatcherville Road, Baytown, TX 77521. **Defendant may be served via Alternative Service as set forth in CMO #6D**.

47. Defendant, **CHUBB FIRE, LTD.** ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134120 **Defendant may be served via Alternative Service as set forth in CMO #6F.**

48. Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to; Chubb Fire & Security, Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc.

49. Defendant, **CLARIANT CORPORATION** ("Clariant") is a corporation organized and existing under the laws of New York, with its principal place of business at 4000 Monroe Road, Charlotte, NC 28205. **Defendant may be served via Alternative Service as set forth in CMO #6A.**

50. On information and belief, Clariant was formerly known as Sandoz Chemicals Corporation, and manufactured fluorointermediates used in AFFF products.

51. Defendant, **CORTEVA, INC.** ("Corteva") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 974 Centre

Rd., Wilmington, DE 19805. **Defendant may be served via Alternative Service as set forth in CMO #6A.**

52.    Defendant, **DEEPWATER CHEMICALS, INC.** ("Deepwater") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 196122 E. County Road 40, Woodward, OK 73801. **Defendant may be served via Alternative Service as set forth in CMO #6B.**

53.    Defendant, **DUPONT DE NEMOURS INC.** (f/k/a DowDuPont, Inc.) ("Dupont de Nemours Inc.") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 974 Centre Road, Wilmington, DE 19805 and 2211 H.H. Dow Way, Midland, MI 48674. **Defendant may be served via Alternative Service as set forth in CMO #6A.**

54.    On June 1, 2019, DowDuPont, Inc. separated its agriculture business through the spin-off Corteva, Inc.

55.    Prior to the separation, DowDuPont owned Corteva as a wholly-owned subsidiary formed in February 2018.

56.    On June 1, 2019, DowDuPont distributed a pro rata dividend of both issued and outstanding shares of Corteva common stock to DowDuPont shareholders.

57.    Corteva holds certain DowDuPont assets and liabilities including DowDuPont's agriculture and nutritional businesses.

58.    On June 1, 2019 DowDuPont, the surviving entity after the spin-off of Corteva and another entity known as Dow, Inc., changed its name to DuPont de Nemours, Inc., to be known as DuPont ("New DuPont"). New DuPont retained assets

in the specialty products business lines following the spin-offs, as well as the balance of the financial assets and liabilities of E.I. DuPont not assumed by Corteva.

59.    Defendants E.I. Du Pont de Nemours and Company; The Chemours Company; The Chemours Company FC, LLC; Corteva, Inc.; and DuPont de Nemours, Inc. are collectively referred to as "DuPont" throughout this Complaint.

60.    Defendant, **DYNAX CORPORATION** ("Dynax") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 79 Westchester Avenue, Pound Ridge, NY 10576. **Defendant may be served via Alternative Service as set forth in CMO #6.**

61.    On information and belief, Dynax entered the AFFF business in 1991 and quickly became a leading global producer of fluorosurfactants and fluorochemical foam stabilizers used in firefighting foam agents.

62.    Defendant, **E. I. DUPONT DE NEMOURS & COMPANY** ("DuPont") is a corporation organized and existing under the laws of Delaware, with its principal place of business is 1007 Market Street, Wilmington, DE 19805. **Defendant may be served via Alternative Service as set forth in CMO #6E.**

63.    DuPont is a successor in interest to DuPont Chemical Solutions Enterprise ("DuPont Chemical"), a Delaware corporation with a principal place of business located at 1007 Market Street Wilmington, DE 19898.

64.    DuPont Chemical was a member of the Telomer Research Program ("TRP"). As a member it was required to provide a list and volume of products it was selling in the United States on a yearly basis.

65.     In a letter addressed to the Office of Pollution Prevention and Toxics (OPPT) Document Control Office, dated May 14, 2003, and signed by Stephen H. Korzeniowski, DuPont provided its Telomer-based sales products in the United States for the year 2002.

66.     The letter, which was redacted and sent to the USEPA under its PFOA Stewardship Program, included AFFF sales volume, on an active ingredient pound basis, as well as its Chemical Abstracts Service (CAS) number and chemical name, and is included in the PFOA Stewardship Program Docket.

67.     Defendant, **KIDDE PLC, INC.** ("Kidde") is a foreign corporation organized and existing under the laws of the State of Delaware, with its principal place of business at One Carrier Place, Farmington, CT 06101. **Defendant may be served via Alternative Service as set forth in CMO #6**.

68.     Upon information and belief, Kidde PLC was formerly known as Williams Holdings, Inc. and/or Williams US, Inc.

69.     Defendant, **KIDDE-FENWAL, INC.** ("Kidde-Fenwal") is a corporation organized under the laws of Delaware, with its principal place of business at One Financial Plaza, Hartford, CT 06101. **Defendant may be served via Alternative Service as set forth in CMO #6**.

70.     Kidde-Fenwal is the successor-in-interest to Kidde Fire Fighting, Inc. (f/k/a Chubb National Foam, Inc. f/k/a National Foam System, Inc.) (collectively, "Kidde/Kidde Fire").

71.     Defendant, **NATION FORD CHEMICAL COMPANY** ("Nation Ford")

is a corporation organized and existing under the laws of South Carolina, with its principal place of business at 2300 Bank Street, Fort Smith, SC 29715. **Defendant may be served via Alternative Service as set forth in CMO #6F.**

72.     Defendant, **NATIONAL FOAM, INC.** ("National Foam") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 141 Junny Road, Angier, NC 27501. **Defendant may be served via Alternative Service as set forth in CMO #6F.**

73.     Upon information and belief, National Foam is a subsidiary of Angus International Safety Group, Ltd.

74.     Defendant, **THE CHEMOURS COMPANY** ("Chemours") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 1007 Market Street, Wilmington, DE 19889. **Defendant may be served via Alternative Service as set forth in CMO #6E.**

75.     In 2015, DuPont spun off its "performance chemicals" business to Chemours along with certain environmental liabilities. Upon information and belief, at the time of the transfer of its performance chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries arising from the manufacture and sale of fluorochemicals and the products that contain fluorochemicals.

76.     Defendant, **THE CHEMOURS COMPANY FC, LLC** ("Chemours FC"), a Successor in Interest to DuPont Chemical, is a corporation organized and

existing under the laws of Delaware, with its principal place of business at 1007 Market Street Wilmington, DE 19899. **Defendant may be served via Alternative Service as set forth in CMO #6E.**

77.     Defendant, **TYCO FIRE PRODUCTS L.P.**, Individually and as Successor in Interest to The Ansul Company ("Tyco") is a limited partnership organized under the laws of Delaware, with its principal place of business at 9 Roszel Road, Princeton, NJ 08540. **Defendant may be served via Alternative Service as set forth in CMO #6.**

78.     Upon information and belief, Tyco is a subsidiary of Johnson Controls International, PLC.

79.     Tyco is the successor in interest of The Ansul Company ("Ansul"), having acquired Ansul in 1990.

80.     Beginning in or around 1975, Ansul manufactured and/or distributed and sold AFFF that contained PFOA and PFOA. After Tyco acquired Ansul in 1990, Tyco/Ansul continued to manufacture, distribute, and sell AFFF that contained PFOA and PFOS.

81.     Upon information and belief, Tyco acquired the Chemguard brand in 2011 and continues to sell Chemguard AFFF products through its Chemguard Specialty Chemicals division.

82.     Defendant, **UNITED TECHNOLOGIES CORPORATION** ("United") is a foreign corporation organized and existing under the laws of the State of Delaware and does business throughout the United States. United Technologies has

its principal place of business at 10 Farm Springs Road, Farmington, CT 06032. **Defendant may be served via Alternative Service as set forth in CMO #6.**

83.    United Technologies designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint.

84.    Defendant, **UTC FIRE & SECURITY AMERICAS CORPORATION, INC.** (f/k/a GE Interlogix, Inc.) ("UTC") is a corporation organized and existing under the laws of North Carolina, with its principal place of business at 3211 Progress Drive, Lincolnton, NC 28092. **Defendant may be served via Alternative Service as set forth in CMO #6.**

85.    Upon information and belief, Kidde-Fenwal, Inc. is part of the UTC Climate Control & Security unit of United Technologies Corporation

## GENERAL FACTUAL ALLEGATIONS

### A.    THE FLUOROCHEMICALS: PFOA AND PFOS

86.    Fluorochemical products are man-made chemicals composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, and the last carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature, which is a reason why these molecules are so persistent. Fluorochemical products that contain eight carbon-fluorine bonds are sometimes referred to as "C8."

87.    Fluorochemical products are highly water soluble, which facilitates the

ease at which they spread throughout the environment, contaminating soil, groundwater, and surface water. This mobility is made more dangerous by their persistence in the environment and resistance to biologic, environmental, or photochemical degradation.

88.     Fluorochemical products are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver. They have been found globally in water, soil, and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.

89.     Fluorochemical products are persistent in the human body. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.

90.     Since fluorochemical products were first produced, information has emerged showing negative health effects caused by exposure to fluorochemical products.

91.     According to the United States Environmental Protection Agency ("EPA"), studies indicate that exposure to fluorochemical products over certain levels may result in developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes).

92.     The EPA has also warned that there is suggestive evidence of carcinogenic potential for fluorochemical products.

93.     The EPA has noted that drinking water can be an additional source of PFC's in a small percentage of communities where these chemicals have contaminated water supplies. "In communities with contaminated water supplies, such contamination is typically localized and associated with a specific facility, for example…an airfield at which fluorochemical products were used for firefighting."

94.     The EPA has issued Health Advisory Levels of 70 parts per trillion ("ppt") for PFOA and PFOS found in drinking water. When both PFOA and PFOS are found in drinking water, the combined concentrations should not exceed 70 ppt.

**B.    AQUEOUS FILM-FORMING FOAM ("AFFF")**

95.     AFFF is a type of water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports and military bases, among other places.

96.     The AFFF designed, manufactured, marketed, distributed, and/or sold by Defendants contained either or both PFOA and PFOS, or the chemical precursors to PFOA or PFOS.

97.     PFOS and/or the chemical precursors to PFOS contained in 3M's AFFF were manufactured by 3M's patented process of electrochemical fluorination ("ECF").

98.     All other Defendants manufactured fluorosurfactants for use in AFFF through the process of telomerization. Telomerization produced fluorotelomers, including PFOA and/or the chemical precursors to PFOA.

99.     AFFF can be made without PFOA, PFOS, or their precursor chemicals, which do not release PFOA, PFOS, and/or their precursor chemicals into the

environment or in humans.

100.    When used as the Defendants intended and directed, Defendants' AFFF releases PFOA, PFOS, and/or their precursor chemicals into the environment.

101.    Once PFOA and PFOS are free in the environment, these chemicals do not hydrolyze, photolyze, or biodegrade under typical environmental conditions and are extremely persistent in the environment. Because of their persistence, they are widely distributed throughout soil, air, and groundwater.

102.    Due to the chemicals' persistent nature, among other things, these chemicals have, and continue to cause injury and damage to Plaintiff.

## C.    DEFENDANTS' KNOWLEDGE

103.    On information and belief, by the early 1980s, Defendants knew, or reasonably should have known, among other things, that: (a) PFOA and PFOS are toxic; and (b) when sprayed in the open environment per the instructions given by the manufacturer, PFOA and PFOS readily migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

104.    Defendants also knew or reasonably should have known that PFOA and PFOS could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens which cause genetic damage.

105. In 1980, 3M published data in peer- reviewed literature showing that humans retain PFOS in their bodies for years. Based on that data, 3M estimated that it could take a person up to 1.5 years to clear just half of the accumulated PFOS from their body after all exposures had ceased.

106. By the early 1980s, the industry suspected a correlation between PFOS exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOS in workers' bodies and birth defects in children of workers.

107. In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.

108. Beginning in 1983, 3M documented a trend of increasing levels of PFOS in the bodies of 3M workers. In an internal memo, 3M's medical officer warned "we must view this present trend with serious concern. It is certainly possible that … exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."

109. Based on information and belief, in 2000, under pressure from the EPA, 3M announced that it was phasing out PFOS and U.S. production of PFOS; 3M's PFOS-based AFFF production did not fully phase out until 2002.

110. From 1951, DuPont, and on information and belief, Chemours, designed, manufactured, marketed, and sold fluorochemical products, including Teflon

nonstick cookware, and more recently, PFAS feedstocks, such as Forafac 1157 N, for the use in the manufacture of AFFF products.

111.    Based on information and belief, in 2001 or earlier, DuPont manufactured, produced, marketed, and sold fluorochemical products and/or PFAS feedstocks to some or all of the AFFF product manufacturers for use in their AFFF products.

112.    DuPont had been studying the potential toxicity of PFOA since at least the 1960s and knew that it was contaminating drinking water drawn from the Ohio River, and did not disclose to the public or to government regulators what they knew about the substance's potential effects on humans, animals, and/or the environment.

113.    By December 2005, the EPA uncovered evidence that DuPont concealed the environmental and health effects of PFOA, and the EPA announced the "Largest Environmental Administrative Penalty in Agency History." The EPA fined DuPont for violating the Toxic Substances Control Act "Section 8(e)—the requirement that companies report to the EPA substantial risk information about chemicals they manufacture, process or distribute in commerce."

114.    By July 2011, DuPont could no longer credibly dispute the human toxicity of PFOA, which it continued to manufacture. The "C8 Science Panel" created as part of the settlement of a class action over DuPont's releases from its Washington Works plant reviewed the available scientific evidence and concluded that a "probable link" exists between PFOA exposure and the serious (and potentially fatal) conditions of pregnancy-induced hypertension and preeclampsia. By October 2012, the C8

Science Panel concluded that a probable link also exists between PFOA and five other conditions—high cholesterol, kidney cancer, thyroid disease, testicular cancer, and ulcerative colitis.

115.    In July 2015, DuPont spun off its chemicals division by creating Chemours as a new publicly traded company, once wholly owned by DuPont. By mid-2015, DuPont had dumped its perfluorinated chemical liabilities into the lap of the new Chemours.

116.    Notwithstanding this knowledge, Defendants negligently and carelessly: (1) designed, manufactured, marketed, distributed, and/or sold AFFF products containing fluorochemicals, and/or fluorochemical products for use in AFFF; (2) failed to issue instructions on how AFFF containing fluorochemical products should be used and disposed of; (3) failed to recall and/or warn the users of fluorochemical products, negligently designed products containing or degrading into PFOA and/or PFOS, of the dangers of surface water, soil, and groundwater contamination as a result of standard use and disposal of these products; and (4) further failed and refused to issue the appropriate warnings and/or recalls to the users of fluorochemical products, notwithstanding the fact that Defendants knew foreseeable the identities of the purchasers and end users of the fluorochemical products, as well as the final fate of fluorochemical products in water and biota, including in humans.

## CAL D. HENRIE'S EXPOSURE TO AFFF

## EXPOSURE TO FOAM WHILE WORKING AS A FIREFIGHTER

117. Upon information and belief, the City of Las Vegas Fire and Rescue Training Center, and the City of Las Vegas Fire and Rescue Department, has stored and used Defendants' AFFF containing PFOA or PFOS chemicals and/or their precursor chemicals in firefighter training and response exercises.

118. For decades, AFFF containing PFAS have been used in firefighter training and response exercises at military bases, airports, and fire departments across the country, including at the City of Las Vegas Fire and Rescue Training Center, and the City of Las Vegas Fire and Rescue Department, both located in Las Vegas, Nevada. The AFFF containing PFAS, which were designed, manufactured, marketed, distributed and/or sold by Defendants, were expected to, and did, reach the City of Las Vegas Fire and Rescue Training Center, and the City of Las Vegas Fire and Rescue Department, both located in Las Vegas, Nevada without substantial change in the condition in which it was sold.

119. Defendants designed, manufactured, marketed, distributed, and/or sold the AFFF containing PFOA or PFOS chemicals and/or their precursor chemicals directly to and/or for use by the City of Las Vegas Fire and Rescue Training Center, and the City of Las Vegas Fire and Rescue Department.

120. The descriptive labels and material safety data sheets for Defendants' AFFF containing PFOA or PFOS and/or their precursor chemicals utilized by firefighters in the City of Las Vegas Fire and Rescue Training Center, and the City of Las Vegas Fire and Rescue Department.

121. The Defendants knew or should have known of the hazards of AFFF

containing PFOA or PFOS and/or their precursor chemicals when the products were manufactured.

122.   In approximately 1988, Plaintiff trained with Defendants' AFFF containing PFOA or PFOS chemicals and/or their precursor chemicals to prepare for potential fires that might occur while training to become a civilian Firefighter at the City of Las Vegas Fire and Rescue Training Center located in Las Vegas, Nevada.

123.   From approximately 1988 until approximately 2017, Plaintiff trained and worked with Defendants' AFFF containing PFOA or PFOS chemicals and/or their precursor chemicals to prepare for potential fires that might occur, and he also used Defendants' AFFF containing PFOA or PFOS chemicals and/or their precursor chemicals while actively responding to calls on active fires while working as a civilian Firefighter for the City of Las Vegas Fire and Rescue Department located in Las Vegas, Nevada.

124.   Throughout his years of service as a civilian firefighter with City of Las Vegas Fire and Rescue Department, Plaintiff was exposed to, inhaled and ingested Defendants' AFFF and fluorochemical products.

125.   During Plaintiff's exposure to Defendants' AFFF products containing PFOA and/or PFOS and/or their precursor chemicals, Plaintiff ingested such products, and the PFOA and/or PFOS and/or their precursor chemicals entered Plaintiff's body.

126.   At no point during his trainings or service did Plaintiff receive any warning that Defendants' AFFF products containing PFOA and/or PFOS and/or their

precursor chemicals were toxic or carcinogenic.

127.    On or about August 4, 2014, Plaintiff's doctors diagnosed Plaintiff with prostate cancer.

128.    Plaintiff suffered, and continues to suffer, the effects of his illness proximately caused by exposure to Defendants' fluorochemical products.

129.    Spouse of Plaintiff suffered and continues to suffer because of the illness to Plaintiff proximately caused by exposure to Defendants' fluorochemical products.

## CAUSES OF ACTION

### COUNT I.  NEGLIGENCE
(Against All Defendants and Does 1-20)

130.    Plaintiffs hereby incorporate by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

131.    As manufacturers, refiners, formulators, distributors, suppliers, sellers, marketers, shippers, or handlers of fluorochemical products, Defendants owed a duty to Plaintiff and users of Defendants' AFFF and AFFF-related fluorochemical products to exercise reasonable care in the instructing, labeling, and warning of the handling, control, use and disposal of Defendants' fluorochemical products.

132.    Defendants also voluntarily assumed a duty towards Plaintiff by affirmatively representing to Plaintiff and users of Defendants' AFFF and AFFF-related fluorochemical products that Defendants' previously detailed acts and/or omissions were not causing any physical harm or other damage to him, and that Defendants' fluorochemical products were safe to use.

133.    Defendants' fluorochemical products are inherently dangerous

substances and Defendants owed a duty of care towards the Plaintiff that was commensurate with the harmful nature of the fluorochemical products and the dangers involved with exposure to fluorochemical products.

134. Defendants failed to correct, clarify, rescind, and/or qualify its representations to Plaintiff that Defendants' acts and/or omissions were not causing any physical harm and/or damage to him, or that the fluorochemical products were safe to use.

135. Despite knowing that their fluorochemical products are toxic, can contaminate soil and water resources, and present significant risks to human health and the environment, Defendants failed to use reasonable care when they: (a) designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold fluorochemical products; (b) issued instructions on how fluorochemical products should be used and disposed of; (c) failed to recall and/or warn the users of fluorochemical products of the dangers to human health and water contamination as a result of standard use and disposal of these products; and (d) failed and refused to issue the appropriate warnings and/or recalls to the users of fluorochemical products regarding the proper use and disposal of these products, notwithstanding the fact that Defendants knew, or could determine with reasonable certainty, the identity of the purchasers of their fluorochemical products.

136. But for Defendants' negligent acts and/or omissions, Plaintiff would not have been exposed to unhealthy levels of fluorochemicals.

137. Defendants' failure to act with reasonable care to (1) design a product to

perform safely; (2) failure to issue an adequate warning or instruction on the use of fluorochemical products warning and; (3) failure to issue a recall, were substantial factors in causing Plaintiff's harm.

138.   Defendants knew or reasonably should have known that users would not realize the danger Defendant's fluorochemical products posed to human health.

139.   A reasonable manufacturer or distributor under the same or similar circumstances would have warned of the danger.

140.   Defendants' negligent acts and omissions directly and proximately caused Plaintiff's prostate cancer and continue to directly, and proximately cause damage to Plaintiff in the form of severe personal injuries, pain, suffering, and emotional distress.

141.   Plaintiff is reasonably certain to have future permanent and lasting detrimental health effects due to Plaintiff's present and past injuries directly and proximately caused by Defendants' negligent acts or omissions.

142.   It has been reasonably foreseeable to Defendants for at least several decades that Defendants' negligent acts and/or omissions would directly and proximately cause bodily injury and economic damage to Plaintiff including the injuries and damages that Plaintiff suffers from.

143.   Defendants were conscious of the dangers of fluorochemical products, and its negligent acts or omissions, and were conscious that bodily injury to Plaintiff would or was likely to result from the fluorochemical products and Defendants' negligent acts and/or omissions. Nevertheless, with reckless indifference to these

consequences, and as previously detailed, Defendants consciously and intentionally acted negligently and/or omitted the duties Defendants knew it owed to Plaintiff, other exposed individuals, and the public at large, and Plaintiff was harmed as a result.

144.    The acts and omissions of Defendants were negligent, intentional, reckless, malicious, willful and/or wanton, and as a direct and proximate result Plaintiff, has suffered and will continue to suffer some or all of the following damages:

  a.    Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

  b.    Physical injury, both temporary and permanent;

  c.    Economic Damages;

  d.    Severe and significant emotional distress and mental pain and suffering;

  e.    Humiliation, embarrassment, and fear;

  f.    Loss of enjoyment of life;

  g.    Annoyance and inconvenience; and

  h.    Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

WHEREFORE, the Plaintiffs pray for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT II.  NEGLIGENCE PER SE
(Against All Defendants and Does 1-20)

145.    Plaintiffs hereby incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

146.    One or more federal statutes, including, but not limited to 15 U.S.C. §§ 2607 and 2614, 33 U.S.C. §§ 1311(a) and 1342, and 42 U.S.C. §§ 6921-6939e, impose duties of care on Defendants with regard to Defendants' actions and/or omissions towards Plaintiff and/or Plaintiff's safety.

147.    By Defendants' acts and/or omissions resulting in harm to Plaintiff, Defendants violated and/or continue to violate and/or breach one or more federal statutes and/or duties, including but not limited to 15 U.S.C. §§ 2607 and 2614, 33 U.S.C. §§ 1311(a) and 1342, and 42 U.S.C. §§ 6921-6939e, constituting negligence per se, including liability for all injuries to Plaintiff associated with the fluorochemical products.

148.    Defendants' violation of law and breach of its statutory duties directly and proximately caused and continue to directly, and proximately cause damage to Plaintiff in the form of economic damage and bodily injury for which Defendants are liable.

WHEREFORE, the Plaintiffs pray for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT III.  PRODUCTS LIABILITY – MANUFACTURING DEFECT
### (Against All Defendants and Does 1-20)

149.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

150.    At all times relevant to the Complaint, Defendants were regularly engaged in the design, formulation, production, creation, making, construction, assembly, rebuilding, sale, distribution, preparation, and labeling, of fluorochemical products.

151.    At all times pertinent to this Complaint, Defendants regularly participated in manufacturing and placing the fluorochemical products into the American stream of commerce.

152.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of fluorochemical products, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including Plaintiff, not to manufacture, sell, or market any product which is unreasonably dangerous for its intended and foreseeable uses.

153.    Defendants' fluorochemical products were defectively designed and manufactured when the products left the hands of Defendants, such that the foreseeable risks associated with the use, storage, and disposal of the fluorochemical products exceeded the alleged benefits associated with its design and formulation.

154.    At all times relevant to this litigation, Defendants' fluorochemical products reached Defendants' intended consumers and users without substantial change in its condition as designed, manufactured, sold, distributed, labeled, and

marketed by Defendants.

155.    Defendants could have manufactured, marketed, and sold alternative designs or formulations of products that did not contain harmful fluorochemicals.

156.    These alternative designs and/or formulations were available, practical, and technologically feasible.

157.    The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to human health that was caused by the Defendants' manufacture, marketing, and sale of fluorochemical products.

158.    The fluorochemical products manufactured, sold, or distributed by the Defendants were defective in design because the foreseeable risk of harm posed by the fluorochemical products could have been reduced or eliminated by the adoption of a reasonable alternative design.

159.    As a direct and proximate result of Defendants' defective design, Plaintiff, other exposed individuals, and the public at large have suffered and will continue to suffer some or all of the following damages:

      a.    Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

      b.    Physical injury, both temporary and permanent;

      c.    Economic Damages;

      d.    Severe and significant emotional distress and mental pain and suffering;

      e.    Humiliation, embarrassment, and fear;

      f.    Loss of enjoyment of life;

      g.     Annoyance and inconvenience; and

      h.     Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

160.   As a result of Defendants' design and formulation of a product, Defendants are strictly liable in damages to Plaintiff.

161.   Defendants' acts were willful, wanton, reckless and/or conducted with a reckless indifference to the rights of Plaintiff.

WHEREFORE, the Plaintiffs pray for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

### COUNT IV.  PRODUCTS LIABILITY – DEFECTIVE DESIGN
(Against All Defendants and Does 1-20)

162.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

163.   At all times relevant to the Complaint, Defendants were regularly engaged in the design, formulation, production, creation, making, construction, assembly, rebuilding, sale, distribution, preparation, and labeling, of fluorochemical products.

164.   At all times pertinent to this Complaint, Defendants regularly participated in placing the fluorochemical products into the American stream of commerce.

165.   As manufacturers, designers, refiners, formulators, distributors,

suppliers, sellers, and/or marketers of fluorochemical products, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including Plaintiff, not to manufacture, sell, and/or market any product which is unreasonably dangerous for its intended and foreseeable uses.

166. Plaintiff used Defendants' fluorochemical products in a reasonably foreseeable manner and without substantial changes in the condition in which the products were sold.

167. Defendants' fluorochemical products used by Plaintiff did not perform as safely as an ordinary consumer would have expected the products to perform when used as Plaintiff did in an intended or reasonably foreseeable manner because PFOA and PFOS are carcinogens and otherwise harmful to human health.

168. Defendants' defective design of the fluorochemical products was far more dangerous than Plaintiff or an ordinary consumer would expect when used, as Plaintiff did, in an intended and reasonably foreseeable manner.

169. Defendants' fluorochemical products failure to perform safely was a substantial factor in causing Plaintiff's harm.

170. Defendants could have manufactured, marketed, and sold alternative designs or formulations of products that did not contain harmful fluorochemicals.

171. These alternative designs and/or formulations were available, practical, and technologically feasible.

172. The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to human health that was caused by Defendants'

manufacture, marketing, and/or sale of fluorochemical products.

173.   The risks of fluorochemical products were not obvious to users of the AFFF, nor were they obvious to users in the vicinity of the AFFF use, including Plaintiff, who were unwittingly exposed to Defendants' toxic and carcinogenic chemicals. Plaintiff could not have reasonably discovered the defects and risks associated with the use of fluorochemical products and could not protect themselves from exposure to Defendants' fluorochemical products.

174.   As a direct and proximate result of Defendants' defective design, Plaintiff has suffered and will continue to suffer some or all of the following damages:

    a.   Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

    b.   Physical injury, both temporary and permanent;

    c.   Economic Damages;

    d.   Severe and significant emotional distress and mental pain and suffering;

    e.   Humiliation, embarrassment, and fear;

    f.   Loss of enjoyment of life;

    g.   Annoyance and inconvenience; and

    h.   Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

175.   As a result of Defendants' design and formulation of a defective product, Defendants are liable in damages to Plaintiff.

176.   Defendants' acts were willful, wanton, reckless and/or conducted with a

reckless indifference to the rights of Plaintiff.

WHEREFORE, the Plaintiffs pray for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT V.  PRODUCTS LIABILITY – FAILURE TO WARN
(Against All Defendants and Does 1-20)

177.    Plaintiffs hereby incorporate by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

178.    Defendants knew or should have known that exposure to fluorochemical products presented a substantial danger when used because it is hazardous to human health and the environment.

179.    Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling fluorochemical products would result in physical harm to Plaintiff.

180.    Ordinary consumers of Defendants' fluorochemical products would not have recognized the risks.

181.    Defendants failed to adequately warn Plaintiff of the potential risks of fluorochemical products.

182.    Adequate instructions and warnings on the fluorochemical products could have reduced or avoided these foreseeable risks of harm to Plaintiff's health.

183.    Had Defendants provided adequate warnings, Plaintiff could have taken measures to avoid or lessen the exposure.

184. The lack of sufficient warnings was a substantial factor in causing Plaintiff's harm. As Defendants' products were:

1. Defective because they failed to contain adequate warnings;

2. Defectively Designed because they are more dangerous than would be contemplated by an ordinary user, and also because the risks of the products outweigh their benefits; and

3. Defectively Manufactured as they failed to comply with their own specifications.

185. Defendants' failure to warn was a direct and proximate cause of Plaintiff's prostate cancer.

186. Defendants' failure to provide adequate and sufficient warnings for the fluorochemical products that they manufactured, marketed, and sold renders the fluorochemical products defective products.

187. As a direct and proximate result of Defendants' product defects (including an inadequate warning), Plaintiff has suffered and will continue to suffer some or all of the following damages:

a. Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

b. Physical injury, both temporary and permanent;

c. Economic Damages;

d. Severe and significant emotional distress and mental pain and suffering;

e. Humiliation, embarrassment, and fear;

f. Loss of enjoyment of life;

g.    Annoyance and inconvenience; and

h.    Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

188.   As a result of Defendants' manufacture, sale, and/or distribution of a defective product, Defendants are liable in damages to Plaintiff.

189.   Defendants' acts were willful, wanton, reckless, and/or conducted with a reckless indifference to the rights of Plaintiff.

WHEREFORE, the Plaintiffs pray for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VI.  STRICT LIABILITY (STATUTORY)
(Against All Defendants and Does 1-20)

190.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

191.   Plaintiff asserts any and all remedies available under statutory causes of action from Plaintiff's state for strict liability against each Defendant.

192.   The Defendants were engaged in designing, manufacturing, marketing, selling, and distribution of AFFF.

193.   AFFF was in a defective condition and unreasonably dangerous to users and/or consumers when designed, manufactured, marketed, sold, and/or distributed to the public by the Defendants.

194. As a direct and proximate result of the Defendants products' aforementioned defects, the Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss, and damages including, but not limited to medical expenses, lost income, and other damages.

WHEREFORE, the Plaintiffs pray for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VII.  STRICT LIABILITY (RESTATEMENT)
(Against All Defendants and Does 1-20)

195. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

196. The Plaintiffs brings strict product liability claims under the common law, Section 402A of the Restatement of Torts (Second), and/or Restatement of Torts (Third) against Defendants.

197. As designed, manufactured, marketed, tested, assembled, equipped, distributed and/or sold by the Defendants the AFFF product was in a defective and unreasonably dangerous condition when put to reasonably anticipated use to foreseeable consumers and users, including the Plaintiff.

198. The Defendants had available reasonable alternative designs which would have made the AFFF product safer and would have most likely prevented the injuries and damages to the Plaintiffs, thus violating state law and the Restatement

of Torts.

199.    The Defendants failed to properly, and adequately warn, and instruct the Plaintiff as to the proper safety and use of the Defendants product.

200.    The Defendants failed to properly, and adequately warn, and instruct Plaintiff regarding the inadequate research and testing of the product.

201.    The Defendants' products are inherently dangerous and defective, unfit, and unsafe for their intended and reasonably foreseeable uses, and do not meet or perform up to the expectations.

202.    As a proximate result of the Defendants' design, manufacture, marketing, sale, and distribution of the products, the Plaintiff has been injured and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, and economic damages.

203.    By reason of the foregoing, the Defendants are strictly liable for the injuries and damages suffered by the Plaintiff, caused by these defects in the AFFF product.

WHEREFORE, the Plaintiffs pray for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

### COUNT VIII.  STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT
(Against All Defendants and Does 1-20)

204.    Plaintiffs hereby incorporate by reference the allegations contained in

the preceding paragraphs of this Complaint as if restated in full therein.

205.    At all times relevant to the Complaint, Defendants were regularly engaged in the design, formulation, production, creation, making, construction, assembly, rebuilding, sale, distribution, preparation, and labeling, of fluorochemical products.

206.    At all times pertinent to this Complaint, Defendants regularly participated in placing the fluorochemical products into the American stream of commerce.

207.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of fluorochemical products, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including Plaintiff, not to manufacture, sell, or market any product which is unreasonably dangerous for its intended and foreseeable uses.

208.    Defendants' fluorochemical products were defectively designed and manufactured when the products left the hands of Defendants, such that the foreseeable risks associated with the use, storage, and disposal of the fluorochemical products exceeded the alleged benefits associated with its design and formulation.

209.    At all times relevant to this litigation, Defendants' fluorochemical products reached Defendants' intended consumers and users without substantial change in its condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendants.

210.    Defendants could have manufactured, marketed, and sold alternative

designs or formulations of products that did not contain harmful fluorochemicals.

211.    These alternative designs and/or formulations were available, practical, and technologically feasible.

212.    The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to human health that was caused by the Defendants' manufacture, marketing, and sale of fluorochemical products.

213.    The fluorochemical products manufactured, sold, or distributed by the Defendants were defective in design because the foreseeable risk of harm posed by the fluorochemical products could have been reduced or eliminated by the adoption of a reasonable alternative design.

214.    As a direct and proximate result of Defendants' defective design, Plaintiff, other exposed individuals, and the public at large have suffered and will continue to suffer some or all of the following damages:

    a.    Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

    b.    Physical injury, both temporary and permanent;

    c.    Economic Damages;

    d.    Severe and significant emotional distress and mental pain and suffering;

    e.    Humiliation, embarrassment, and fear;

    f.    Loss of enjoyment of life;

    g.    Annoyance and inconvenience; and

    h.    Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and

costs associated with the prosecution of this action.

215.   As a result of Defendants' design and formulation of a product, Defendants are strictly liable in damages to Plaintiff.

216.   Defendants' acts were willful, wanton, reckless and/or conducted with a reckless indifference to the rights of Plaintiff.

WHEREFORE, the Plaintiffs pray for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT IX.  STRICT PRODUCTS LIABILITY – DESIGN DEFECT
### (Against All Defendants and Does 1-20)

217.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

218.   At all times relevant to the Complaint, Defendants were regularly engaged in the design, formulation, production, creation, making, construction, assembly, rebuilding, sale, distribution, preparation, and labeling, of fluorochemical products.

219.   At all times pertinent to this Complaint, Defendants regularly participated in placing the fluorochemical products into the American stream of commerce.

220.   As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of fluorochemical products, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including

Plaintiff, not to manufacture, sell, or market any product which is unreasonably dangerous for its intended and foreseeable uses.

221. Defendants' fluorochemical products were defectively designed and manufactured when the products left the hands of Defendants, such that the foreseeable risks associated with the use, storage, and disposal of the fluorochemical products exceeded the alleged benefits associated with its design and formulation.

222. At all times relevant to this litigation, Defendants' fluorochemical products reached Defendants' intended consumers and users without substantial change in its condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendants.

223. Defendants could have manufactured, marketed, and sold alternative designs or formulations of products that did not contain harmful fluorochemicals.

224. These alternative designs and/or formulations were available, practical, and technologically feasible.

225. The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to human health that was caused by the Defendants' manufacture, marketing, and sale of fluorochemical products.

226. The fluorochemical products manufactured, sold, or distributed by the Defendants were defective in design because the foreseeable risk of harm posed by the fluorochemical products could have been reduced or eliminated by the adoption of a reasonable alternative design.

227. As a direct and proximate result of Defendants' defective design,

Plaintiff, other exposed individuals, and the public at large have suffered and will continue to suffer some or all of the following damages:

a.   Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

b.   Physical injury, both temporary and permanent;

c.   Economic Damages;

d.   Severe and significant emotional distress and mental pain and suffering;

e.   Humiliation, embarrassment, and fear;

f.   Loss of enjoyment of life;

g.   Annoyance and inconvenience; and

h.   Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

228.   As a result of Defendants' design and formulation of a product, Defendants are strictly liable in damages to Plaintiff.

229.   Defendants' acts were willful, wanton, reckless and/or conducted with a reckless indifference to the rights of Plaintiff.

WHEREFORE, the Plaintiffs pray for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT X.  STRICT PRODUCTS LIABILITY – FAILURE TO WARN
(Against All Defendants and Does 1-20)

230.   Plaintiffs hereby incorporate by reference all allegations contained in

the preceding paragraphs of this Complaint as if restated in full therein.

231.    Defendants knew or should have known that exposure to fluorochemical products presented a substantial danger when used because it is hazardous to human health and the environment.

232.    Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling fluorochemical products would result in physical harm to Plaintiff.

233.    Ordinary consumers of Defendants' fluorochemical products would not have recognized the risks.

234.    Defendants failed to adequately warn Plaintiff of the potential risks of fluorochemical products.

235.    Adequate instructions and warnings on the fluorochemical products could have reduced or avoided these foreseeable risks of harm to Plaintiff's health.

236.    Had Defendants provided adequate warnings, Plaintiff could have taken measures to avoid or lessen the exposure.

237.    The lack of sufficient warnings was a substantial factor in causing Plaintiff's harm. As Defendants' products were:

    1.    Defective because they failed to contain adequate warnings;

    2.    Defectively Designed because they are more dangerous than would be contemplated by an ordinary user, and also because the risks of the products outweigh their benefits; and

    3.    Defectively Manufactured as they failed to comply with their own specifications.

238.    Defendants' failure to warn was a direct and proximate cause of Plaintiff's prostate cancer.

239.    Defendants' failure to provide adequate and sufficient warnings for the fluorochemical products that they manufactured, marketed, and sold renders the fluorochemical products defective products.

240.    As a direct and proximate result of Defendants' product defects (including an inadequate warning), Plaintiff has suffered and will continue to suffer some or all of the following damages:

       a.    Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

       b.    Physical injury, both temporary and permanent;

       c.    Economic Damages;

       d.    Severe and significant emotional distress and mental pain and suffering;

       e.    Humiliation, embarrassment, and fear;

       f.    Loss of enjoyment of life;

       g.    Annoyance and inconvenience; and

       h.    Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

241.    As a result of Defendants' manufacture, sale, and/or distribution of a product, Defendants are strictly liable in damages to Plaintiff.

242.    Defendants' acts were willful, wanton, reckless, and/or conducted with a reckless indifference to the rights of Plaintiff.

WHEREFORE, the Plaintiffs pray for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT XI.  CONCEALMENT, MISREPRESENTATION, AND FRAUD
### (Against All Defendants and Does 1-20)

243.    Plaintiffs hereby incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

244.    Defendants knowingly, intentionally, maliciously, willfully, wantonly, recklessly and/or negligently failed and/or refused to advise Plaintiff of the dangers and/or health risks posed by Defendants' fluorochemical products.

245.    Defendants negligently, knowingly, maliciously, willfully, wantonly, recklessly, intentionally, and/or negligently withheld, misrepresented, and/or concealed information regarding Defendants' fluorochemical products from Plaintiff who had a right to know of information which would have prevented Plaintiff from being exposed and/or continuing to be exposed to the fluorochemical products.

246.    For at least several decades, Defendants had knowledge or the means of knowledge that Defendants' fluorochemical products were causally connected with or could increase the risk of causing damage to humans and animals, including knowledge of statistically significant findings showing a causal connection between exposure to fluorochemical products and physical injuries in humans and animals.

247.    In connection with the fluorochemical products, Defendants have had and continue to have a general duty of care to disclose to Plaintiff the actual and

potential harm to their persons as a direct and proximate result of Defendants' acts and/or omissions, including a general duty of care to disclose to Plaintiff that Defendants had, and were continuingly, exposing Plaintiff to harmful levels of fluorochemicals.

248.   In addition to its general duty of care, Defendants also voluntarily assumed a duty to disclose to Plaintiff the actual and potential harm to his body as a direct and proximate result of Defendants' acts and/or omissions, including a duty to disclose to Plaintiff that Defendants had exposed, and were continuingly exposing Plaintiff to harmful fluorochemical products, which duty was voluntarily assumed by affirmatively representing to Plaintiff that the Defendants and their fluorochemical exposure were harmless, when Defendants knew and/or reasonably should have known that the Defendants' fluorochemical products caused, and were continuing to cause, bodily injury.

249.   Through Defendants' superior knowledge, responsibility, and/or control over the fluorochemical products, and Defendants' voluntary actions and/or representations, a relationship of trust and confidence existed between Defendants and Plaintiff.

250.   Despite Defendants' knowledge regarding fluorochemical exposure, and despite Defendants' duties to disclose to Plaintiff, Defendants negligently, maliciously, knowingly, willfully, wantonly, recklessly and/or intentionally withheld, misrepresented, and/or concealed information from Plaintiff regarding exposure to fluorochemical products.

251.    Defendants withheld, misrepresented, and/or concealed information regarding fluorochemical exposure from Plaintiff with the intention to mislead and/or defraud him into believing that their fluorochemical exposure was not harmful, and to mislead and/or defraud him into continuing to use the fluorochemical products.

252.    Defendants withheld, misrepresented, and/or concealed information regarding fluorochemical exposure that was a substantial factor in causing Plaintiff's harm.

253.    As a direct and proximate result of the aforesaid acts and/or omissions by Defendants, acting for and on its own behalf and as agent, ostensible agent, employee, conspirator and/or joint venture of others, Plaintiff was exposed to Defendants' fluorochemical products and was injured.

254.    Defendants not only withheld, misrepresented, and/or concealed material information from Plaintiff but also committed fraud against Plaintiff by affirmatively representing to Plaintiff that their fluorochemical products were harmless and/or did not present any risk of harm, when Defendants knew, reasonably should have known, and/or with utter disregard and recklessness as to whether it was true or not, that Defendants' fluorochemical products had caused, and were continuing to cause, bodily injury and/or risk of such bodily injury to Plaintiff.

255.    Defendants' representations to Plaintiff were knowingly, intentionally, negligently, and/or recklessly false.

256.    Defendants had, and continue to have, a duty of care to provide Plaintiff, with truthful representations regarding the actual and potential harm to his person

as a direct and proximate result of Defendants' acts and/or omissions, and Defendants voluntarily assumed a duty of care to provide Plaintiff with truthful representations regarding Defendants' fluorochemical products and the actual and potential harm to his persons as a direct and proximate result of Defendants' acts and/or omissions.

257.   Defendants' affirmative representations and/or omissions to Plaintiff were false and were material to Plaintiff in forming his belief that Defendants' fluorochemical products were safe, in causing him to continue to use the fluorochemical products, and in causing him to not seek treatment and/or ways to remedy his past and continuing exposure to fluorochemical products.

258.   Defendants made the affirmative representations and/or omissions to Plaintiff with the intention that Plaintiff would be misled into relying on such affirmative representations and/or omissions.

259.   Plaintiff relied on Defendants' affirmative representations and/or omissions in forming his belief that Defendants' fluorochemical products were safe in causing them to continue to use the fluorochemical products, and in not seeking treatment and/or ways to remedy his past and continuing exposure to Defendants' fluorochemical products.

260.   Plaintiff was damaged and physically harmed as a direct and proximate result of his justified reliance on Defendants' affirmative, fraudulent representations and/or omissions and, as a direct and proximate result of such justified reliance, Plaintiff continued to use the fluorochemical products.

WHEREFORE, the Plaintiffs pray for judgments against the Defendants for

actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

### COUNT XII.  BREACH OF EXPRESS AND IMPLIED WARRANTIES
(Against All Defendants and Does 1-20)

261.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

262.    At all times relevant hereto, the Defendants manufactured, marketed, labeled, and sold the AFFF products that has been previously alleged and described herein.

263.    At the time the Defendants designed, developed, marketed, sold, labeled, and distributed the AFFF products, the Defendants knew of the use for which it was intended, and implied and/or expressly warranted that the product was merchantable, safe, and fit for its intended purpose.

264.    The Defendants warranted that the product was merchantable and fit for the particular purpose for which it was intended and would be reasonably safe. These warranties were breached, and such breach proximately resulted in the injuries and damages suffered by the Plaintiff.

265.    The Defendants, through description, affirmation of fact, and promise expressly warranted, and made assurances as described herein to military bases, fire departments, and the public, including Plaintiff, that their AFFF products were safe, and reasonably fit for their intended purposes.

266.    The Defendants breached these express warranties because their AFFF

products were unreasonably dangerous, and defective as described herein, and not as the Defendants had represented.

267.   The Plaintiff is within the class of foreseeable users and reasonably relied upon Defendants' judgment, and the implied and/or express warranties in using the products.

268.   The Defendants breached their implied and/or express warranties and did not meet the expectations for the performance of the product when used for its intended use and was neither of merchantable quality nor safe for its intended use in that the product has a propensity to cause severe injury, pain, and cancer.

WHEREFORE, the Plaintiffs pray for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

### COUNT XIII.  NEGLIGENT, INTENTIONAL, AND RECKLESS INFLICTION OF EMOTIONAL DISTRESS
(Against All Defendants and Does 1-20)

269.   Plaintiffs hereby incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

270.   Defendants' acts and/or omissions were negligent, intentional, and/or reckless, including Defendants' continued pollution of the environment and resultant exposure of Plaintiff to harmful fluorochemical products, despite knowing for decades that such exposure was causing and would continue to cause harm and/or unacceptable risk of harm to Plaintiff.

271.    Defendants' negligently, knowingly and/or intentionally withheld and concealed material information from and/or affirmatively misrepresented to Plaintiff that they were not exposed to harmful fluorochemical products and/or that the fluorochemical products were not causing or creating any risk of harm to them, despite knowing at the time these concealments and/or misrepresentations were made that the fluorochemical products were causing and would continue to cause harm and/or unacceptable risk of harm to persons, including Plaintiff.

272.    At the time of Defendants' negligent, knowing, and/or intentional acts and/or omissions, it was foreseeable to Defendants and Defendants were certain and/or substantially certain that its actions and/or omissions would cause emotional distress to Plaintiff.

273.    Defendants' acts and/or omissions were extreme, outrageous, intolerable, and/or offended the generally accepted standards of decency and morality.

274.    By continuing to expose Plaintiff to harmful fluorochemical products, and continuing to misrepresent to Plaintiff that the fluorochemical products were not and would not cause them harm or risk of harm and/or continuing to withhold and/or conceal from Plaintiff material information on such issues, despite knowing that the fluorochemical products were causing and would continue to cause harm and/or risk of harm, Defendants acted in an extreme, outrageous, and intolerable manner which offended any generally accepted standard of decency and morality.

275.    Defendants' acts and/or omissions resulting in Defendants' concealment

and/or misrepresentations, directly and proximately caused physical harm, and continue to cause physical harm, to Plaintiff.

276.    Defendants' acts and/or omissions resulting in Defendants' concealment and/or misrepresentations, directly and proximately caused great emotional suffering, and continue to cause emotional suffering and distress, to Plaintiff.

277.    Defendants' extreme, outrageous, and intolerable actions were a substantial factor in causing Plaintiff to suffer severe physical, mental, and emotional distress.

278.    As a direct and proximate result of Defendants' extreme, outrageous, and intolerable actions, Plaintiff has and will continue to suffer severe physical, mental, and emotional distress.

279.    No reasonable person could be expected to endure the mental anguish caused by the knowledge that entities have negligently, knowingly, and/or intentionally exposed them to years of harmful contact with AFFF containing PFOA or PFOS and/or their precursor chemicals, and has furthermore actively misrepresented and/or concealed such danger from them, while reaping hundreds of millions of dollars in profits as a direct and proximate result.

WHEREFORE, the Plaintiffs pray for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT XIV.  PAST AND CONTINUING TRESSPASS, AND BATTERY
(Against All Defendants and Does 1-20)

280.   Plaintiffs hereby incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

281.   Defendants have known for several decades that their fluorochemical products are harmful and toxic to humans and animals, and once ingested, will remain in a person's body for a long time, including through binding to blood and/or tissues.

282.   Despite such knowledge, Defendants continued to use the fluorochemical products, which caused harmful physical contact with Plaintiff.

283.   Defendants' continued actions with knowledge that such actions will result in harmful physical contact with Plaintiff demonstrate intent and/or reckless indifference by Defendants without regard to the harm they have caused and will cause.

284.   Defendants' intentional acts and/or omissions have resulted in fluorochemicals, in the body of Plaintiff or otherwise unlawful and harmful invasion, contact, and/or presence of fluorochemicals in Plaintiff's body, which interferes with Plaintiff's rightful use and possession of Plaintiff's body.

285.   The fluorochemicals present in and/or on Plaintiff's body originating from Defendants' fluorochemical products was at all relevant times hereto, and continues to be, the property of Defendants.

286.   The invasion and presence of the fluorochemical products in and/or on Plaintiff's body was and continues to be unconsented and without permission or

authority from Plaintiff or anyone who could grant such permission or authority.

287.    Defendants' intentional acts and/or omissions were done with the knowledge and/or belief that the invasion, contact, and/or presence of fluorochemical products onto, and/or into Plaintiff's body were substantially certain to result from those acts and/or omissions.

288.    Harmful contact with Plaintiff's body was the direct and/or indirect result of Defendant's intentional acts and/or omissions.

289.    The presence and continuing presence of the fluorochemical products in and/or on Plaintiff's body is offensive, unreasonable, and/or harmful and constitutes a continuing and/or permanent trespass and battery.

290.    Defendants' past and continuing trespass and battery upon Plaintiff's body directly and proximately caused and continues to directly, and proximately cause damage to Plaintiff in the form of bodily injury, for which Defendants are liable.

WHEREFORE, the Plaintiffs pray for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT XV.  WANTONNESS
(Against All Defendants and Does 1-20)

291.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

292.    Defendants and their employees, agents, officers, and representatives owed a duty of care to end users of their AFFF products, including Plaintiff.

293.    Defendants breached the duty of care owed to the Plaintiff.

294.    The actions of Defendants and their employees, agents, officers, and representatives were willful and wanton and exhibited a reckless disregard for the life, health, and safety of the end users of Defendants' AFFF products, including Plaintiff.

295.    As a proximate and foreseeable consequent of the actions of Defendants, Plaintiff was exposed to unreasonably dangerous toxic PFAS containing AFFF, which caused Plaintiff's injury.

WHEREFORE, the Plaintiffs pray for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

### COUNT XVI.  VIOLATION OF CONSUMER FRAUD STATUTES
### (Violation of Unfair Trade Practices and Consumer Protection Act)
(Against All Defendants and Does 1-20)

296.    Plaintiffs hereby incorporate by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

297.    Defendants had a statutory duty to refrain from unfair or deceptive acts or practices in the sale and promotion of their Aqueous Film Forming Foam Products to Plaintiff.

298.    Defendants engaged in unfair, unconscionable, deceptive, fraudulent, and misleading acts or practices in violation of Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. §§ 41.515, *et seq*.

299.     Through its false, untrue, and misleading promotion of their Aqueous Film Forming Foam Products, Defendants induced Plaintiff to rely, agree to, use, purchase, and/or pay for the purchase of their Aqueous Film Forming Foam Products.

300.     Defendants misrepresented the alleged benefits and characteristics of their Aqueous Film Forming Foam Products; suppressed, omitted, concealed, and failed to disclose material information concerning known adverse effects of their Aqueous Film Forming Foam Products; misrepresented the quality of their Aqueous Film Forming Foam Products as compared to alternatives; misrepresented and advertised that their Aqueous Film Forming Foam Products were of a particular standard, quality, or grade that their Aqueous Film Forming Foam Products were not; misrepresented their Aqueous Film Forming Foam Products in such a manner that later, on disclosure of the true facts, there was a likelihood that Plaintiff would have opted for an alternatives different course of action.

301.     Defendants' conduct created a likelihood of, and in fact caused, confusion and misunderstanding. Defendants' conduct misled, deceived, and damaged Plaintiff, and Defendants' fraudulent, misleading, and deceptive conduct was perpetrated with an intent that Plaintiff rely on said conduct by agreeing to, use, purchasing, and/or paying for purchases of their Aqueous Film Forming Foam Products. Moreover, Defendants knowingly took advantage of Plaintiff, who was reasonably unable to protect their interests due to ignorance of the harmful adverse effects of Defendants' their Aqueous Film Forming Foam Products.

302.     Defendants' conduct was willful, outrageous, immoral, unethical,

oppressive, unscrupulous, unconscionable, and substantially injurious to Plaintiff and offends the public conscience.

303.    Plaintiff relied on, agreed to, and/or purchased Defendants' Aqueous Film Forming Foam Products primarily for personal, professional, family, or household purposes.

304.    As a result of Defendants' violative conduct, Plaintiff relied upon, used, agreed to purchase, and/or paid for purchases of Defendants' Aqueous Film Forming Foam Products that were not made for resale.

305.    Plaintiff was injured by the cumulative and indivisible nature of Defendants' conduct. The cumulative effect of Defendants' conduct directed at consumers was to create demand for and sell Defendants' Aqueous Film Forming Foam Products. Each aspect of Defendants' conduct combined to artificially create sales of the Defendants' Aqueous Film Forming Foam Products.

306.    Defendants has a statutory duty to refrain from unfair or deceptive acts or trade practices in the design, labeling, development, manufacture, promotion, and sale of Defendants' Aqueous Film Forming Foam Products.

307.    Had Defendants not engaged in the deceptive conduct described above, Plaintiff would not have, used, purchased, and/or paid for the products and would not have incurred related medical costs.

308.    Defendants' deceptive, unconscionable, or fraudulent representations and material omissions to consumers, including Plaintiff, constituted unfair and deceptive acts and trade practices in violation of consumer protection laws.

309.    Defendants' actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or trade practices in violation of the consumer deceptive trade practices laws.

310.    Defendants have engaged in unfair competition or unfair or deceptive acts or trade practices or have made false representations in violation of the consumer deceptive trade practices laws.

311.    Under Nev. Rev. Stat. §§ 41.515, *et seq.*, suppliers, manufacturers, advertisers, and/or sellers are subject to liability under such legislation for unfair, deceptive, fraudulent, and unconscionable consumer sales practices.

312.    Defendants violated consumer protection laws enacted to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising, by knowingly and falsely representing that Defendant's Aqueous Film Forming Foam Products were fit to be used for the purpose for which they were intended, when in fact they were defective and dangerous, and by other acts alleged herein. These representations were made in uniform promotional materials.

313.    The actions and omissions of Defendants alleged herein are uncured or incurable deceptive acts. Nev. Rev. Stat. §§ 41.515, *et seq.* was enacted to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising.

314.    Defendants had actual knowledge of the defective and dangerous condition of Defendants' Aqueous Film Forming Foam Products and failed to take

any action to cure such defective and dangerous conditions.

315.   Plaintiff relied upon Defendants' misrepresentations and omissions in determining to use Defendants' Aqueous Film Forming Foam Products.

316.   Defendants'   deceptive,   unconscionable,   and/or   fraudulent representations, and material omissions made to Plaintiff, and various fire departments around the United States, constituted unfair and deceptive acts and practices.

WHEREFORE, the Plaintiffs pray for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

### COUNT XVII.  LOSS OF CONSORTIUM
(Against All Defendants and Does 1-20)

317.   Plaintiffs hereby incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

318.   Spouse of Plaintiff, lives and cohabits with Plaintiff and has been married to Plaintiff since 1981.

319.   As a direct and proximate result of the conduct of Defendants as outlined above, Spouse of Plaintiff has necessarily paid and/or has become liable to pay, and will continue to pay and/or continue to be liable to pay, for medical aid, medical treatment, and medications of Plaintiff.

320.   As a direct and proximate result of the conduct of Defendants as outlined above, Spouse of Plaintiff has been caused and will continue to be caused the loss of

her husband's consortium, companionship, services, society, love, comforts, and their martial association has been altered, and; accordingly, Spouse of Plaintiff has been caused great mental anguish and emotional distress.

321.    Defendants' conduct, as described above, was willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of their conduct, including to the health, safety, and welfare of their patients, and warrants an award of punitive damages.

WHEREFORE, the Plaintiffs pray for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

### COUNT XVIII.  PUNITIVE DAMAGES
(Against All Defendants and Does 1-20)

322.    Plaintiffs hereby incorporate by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

323.    At all times relevant to the present cause of action, Defendants manufactured, marketed, and sold the fluorochemical products that were used by Plaintiff and that resulted in the physical bodily injuries that Plaintiff has suffered and will continue to suffer.

324.    At the time the above-described, affirmative, voluntary, and intentional acts were performed by Defendants, Defendants had good reason to know or expect that their fluorochemical products were toxic chemicals capable of causing harm to

human health.

325. Defendants' negligent, reckless, willful, fraudulent, and/or wanton actions and/or intentional failures to act caused Plaintiff to be exposed to fluorochemical products.

326. The willful, wanton, malicious, fraudulent and/or reckless conduct of Defendants, includes, but is not limited to:

      a.    issuing no warnings and failing to divulge material information concerning the release of fluorochemicals, including, but not limited to PFOA and PFOS;

      b.    failing to take all reasonable measures to ensure fluorochemical products would be used effectively and properly disposed of;

      c.    failing to prevent the foreseeable impacts of fluorochemical exposure upon the Plaintiff; and

      d.    withholding, misrepresenting, and/or concealing information regarding the releases of fluorochemical products and exposure from Plaintiff, other exposed individuals, and the public at large with the intention to mislead and/or defraud them into believing that their exposure to fluorochemical products was not harmful, and to mislead and/or defraud them into continuing to purchase and consume drinking water contaminated with fluorochemical products.

327. As a result of Defendants' conduct, Plaintiff has been forced to incur and will continue to incur significant costs related to the harm caused by Defendants' fluorochemical products and will continue to suffer serious, debilitating, and severe physical, mental, and emotional distress of his prostate cancer caused by Defendants' fluorochemical products.

328. Defendants have demonstrated an outrageous conscious disregard for

the physical safety of Plaintiff and acted with implied malice, warranting the imposition of punitive damages.

329.    Upon information and belief, Defendants' conduct involved wanton, willful, and/or a conscious and reckless disregard for the health, safety, property, and rights of others. The Court should award the Plaintiff punitive damages in an amount sufficient to deter and punish such conduct.

330.    Damages should be trebled in the maximum amounts permitted by Nev. Rev. Stat. §§ 42.005, *et seq.*

WHEREFORE, the Plaintiffs pray for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## TOLLING OF THE STATUTE OF LIMIATIONS

### A.     DISCOVERY RULE TOLLING

331.    Plaintiff had no way of knowing about the risk of severe injury associated with the use of and exposure to AFFF until very recently.

332.    Within the time period of any applicable statute of limitations, Plaintiff could not have discovered, through the exercise of reasonable diligence, that exposure to AFFF is harmful to human health.

333.    Plaintiff did not discover and did not know of facts that would cause a reasonable person to suspect the risk associated with the use of and exposure to AFFF; nor would a reasonable and diligent investigation by Plaintiff have disclosed

that AFFF could cause personal injury.

334.    For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiff's claims.

## B.    FRAUDULENT CONCEALMENT TOLLING

335.    All applicable statute of limitations have also been tolled by Defendants knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

336.    Instead of disclosing critical safety information regarding AFFF, Defendants have consistently and falsely represented the safety of AFFF products.

337.    This fraudulent concealment continues through present day.

338.    Due to this fraudulent concealment, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiff's claims.

## C.    ESTOPPEL

339.    Defendants were under a continuous duty to consumer, end users, and other persons coming into contact with their products, including Plaintiff, to accurately provide safety information concerning its products and the risk associated with the use of and exposure to AFFF.

340.    Instead, Defendants knowingly, affirmatively, and actively concealed safety information concerning AFFF and the serious risks associated with the use of and exposure to AFFF.

341.    Based on the foregoing, Defendants are estopped from relying on any statute of limitations in defense of this action.

## DAMAGES

342.    Plaintiffs hereby incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

343.    As a direct and proximate result of Defendants' tortious conduct and breach of duties as set forth herein, Plaintiff, CAL D. HENRIE, has sustained, and continue to sustain serious injuries after developing prostate cancer.

344.    The serious injuries sustained by Plaintiff, CAL D. HENRIE, are painful, permanent, and disabling, and have necessitated extensive medical care, and treatment in the past, and will continue to necessitate extensive medical care and treatment in the future.

345.    As a direct and proximate result of the described injuries above, Plaintiff, CAL D. HENRIE, has sustained, and continues to sustain, pain and suffering, both physical and mental, and with reasonable probability will continue to experience pain and suffering, both physical and mental, in the future.

346.    As a further direct and proximate result of the described injuries above, Plaintiff, CAL D. HENRIE, has sustained, and continues to sustain, disability, and loss of enjoyment of life, and will continue to sustain disability and loss of enjoyment of life in the future.

347.    As a further direct and proximate result of the described injuries above, Plaintiff, CAL D. HENRIE, has sustained, and continues to sustain medical expenses, out of pocket expenses, and costs. With reasonable probability these expenses will continue to sustain medical expenses, life care expenses, and other out of pocket costs

and expenses in the future.

348.    As a direct and proximate result of Defendants' tortious conduct and breach of duties as set forth herein, Plaintiff Spouse, KELLI JEAN HENRIE, has sustained and will continue to sustain loss of consortium of her husband.

WHEREFORE, Plaintiffs, by and through undersigned counsel, demands judgments against Defendants for all applicable damages, costs of this action, post-judgment interest, and trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs demand judgments against Defendants, and each of them, jointly and severally, and request the following relief from the Court:

I.      Physical pain and suffering in the past and which, in reasonable probability, Plaintiff, CAL D. HENRIE will continue to suffer in the future;

II.     Physical impairment and incapacity in the past and which, in reasonable probability, Plaintiff, CAL D. HENRIE will continue to suffer in the future;

III.    Mental anguish in the past and which, in reasonable probability, Plaintiff, CAL D. HENRIE will sustain in the future;

IV.     Reasonable and necessary medical expenses for treatment received in the past, and based upon reasonable medical probability, the reasonable medical expenses Plaintiff, CAL D. HENRIE will incur in the future;

V.      Disfigurement in the past and which, in reasonable probability, Plaintiff, CAL D. HENRIE will continue to suffer in the future;

VI.     Lost wages, loss of earnings, and/or lost earning capacity that Plaintiff, CAL D. HENRIE has incurred in the past and will continue to incur in the future;

VII.    Damages for loss of society, comfort, companionship, and consortium Spouse of Plaintiff, KELLI JEAN HENRIE has incurred and will

continue to suffer in the future;

VIII.  Damages for loss of household services, Spouse of Plaintiff, KELLI JEAN HENRIE has incurred and will continue to incur in the future;

IX.  Punitive damages as available under Nevada law;

X.  Treble damages in the maximum amounts permitted by Nevada law;

XI.  Plaintiff, CAL D. HENRIE, and Spouse of Plaintiff, KELLI JEAN HENRIE be awarded full, fair, and complete recovery for all claims and causes of action relevant to this action;

XII.  Plaintiff, CAL D. HENRIE, and Spouse of Plaintiff, KELLI JEAN HENRIE be awarded all appropriate costs, fees, expenses, and prejudgment and post-judgment interest pursuant to the laws of the State of Nevada as authorized by law on the judgements entered in Plaintiff's behalf; and

XIII.  Such other relief the court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to FED. R. CIV. P. 38(b), Plaintiffs respectfully demand a jury trial on the issues triable by jury.

Dated: <u>April 21, 2023</u>                    Respectfully submitted,

                                               **SIMON GREENSTONE PANATIER, P.C.**


                                               <u>*/s/ Shreedhar R. Patel*</u>
                                               Shreedhar R. Patel
                                               TX Bar No. 24074864
                                               1201 Elm Street, Suite 3400
                                               Dallas, TX 75270
                                               Tel: (214) 276-7680
                                               Fax: (214) 276-7699
                                               Email: spatel@sgptrial.com

                                               ***Attorney for Plaintiffs***